UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GAYL ANN FLYNN, individually and as Special Representative of the Estate of Edward Louis Flynn, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:21-cv-02279-JPH-MJD ) |
| CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY, DANIEL BUTLER, OMARI STRINGER, DUSTIN PERVINE, CODY ST. JOHN, ROBERT RIDER, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

A high-speed police chase ended tragically when the suspect struck and killed an uninvolved driver, Edward Flynn. Mr. Flynn's widow, Gayl Flynn, has sued the Consolidated City of Indianapolis and Marion County and five of its police officers, claiming that their actions violated the United States Constitution and were negligent. Defendants have filed a motion for summary judgment. Dkt. [57]. For the reasons below, that motion is **GRANTED** as to Ms. Flynn's federal constitutional claims.

I.
Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to

1

the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

### A. The chase

On December 15, 2020, Indianapolis Metropolitan Police Department ("IMPD") Officers Butler and Stringer were dispatched to investigate a truck that may have been stolen. Dkt. 72-3 at 12–13 (Stringer Dep.). Officer Butler parked behind the truck, knocked on the driver's window, and told the driver—later identified as James Shirley—to open the door. Dkt. 72-1 at 13 (Butler Dep.); dkt. 57-6 (Butler Body Cam at 1:07–1:17). Mr. Shirley did not comply with the order and instead backed into Officer Butler's patrol car—almost hitting Officers Butler and Stringer—and fled. Dkt. 72-1 at 13–14 (Butler Dep.); dkt. 57-6 (Butler Body Cam at 1:25–1:37).

Officer Stringer activated his emergency lights and pursued Mr. Shirley. Dkt. 72-3 at 13 (Stringer Dep.); dkt. 57-7 (Stringer Body Cam at 1:30–1:40). Officer Butler followed and "call[ed] the pursuit" by informing other officers of speeds and location over his radio. Dkt. 72-1 at 14 (Butler Dep.). A third officer, Lieutenant Rider, soon began supervising the chase from his patrol car a few miles away. Dkt. 72-4 at 11–13 (Rider Dep.). Officers Stringer and Butler did not respond to Lieutenant Rider's requests for traffic and speed conditions, so he came "very close to terminating" the pursuit. *Id.*

However, Officer Pervine was nearby and drove up to 100 miles per hour to join the chase. Dkt. 72-6 at 13 (Pervine Dep.); dkt. 57-10 (Pervine Body Cam at 0:34–0:45). When Officer Pervine began "calling the pursuit," Lieutenant

Rider allowed them to continue.  Dkt. 72-6 at 11 (Pervine Dep.); dkt. 72-4 at 13 (Rider Dep.).  Lieutenant Rider believed that the pursuit's speed was 60 to 65 miles per hour, dkt. 72-4 at 30–31 (Rider Dep. at 30:24–31:1), but Officer Stringer consistently topped 80 miles per hour, dkt. 57-7 (Stringer Body Cam at 5:25–5:35).

While fleeing, Mr. Shirley was speeding; ran stop lights and stop signs; and drove on the sidewalk and on the shoulder of the highway.  Dkt. 57-10 (Pervine Body Cam at 1:45–2:48); dkt. 72–6 at 17–18 (Pervine Dep. at 17–18).  During the pursuit, Officer St. John put "stop sticks" on the road to try to end the pursuit, but that was unsuccessful.  Dkt. 57-12 at 13–14 (St. John Dep.).  The pursuit ended after about five and a half minutes when Mr. Shirley ran a red light at 61 miles per hour and struck Edward Flynn's car.  Dkt. 72-3 at 94; dkt. 72-8 at 3.  Mr. Flynn was pronounced dead at the hospital.  *Id.*

### B. IMPD vehicle-pursuit policies

IMPD policy allows officers to pursue a vehicle when an officer has "reasonable suspicion to believe an occupant has committed . . . a felony (beyond the act of fleeing alone)" or when an officer witnesses a misdemeanor.  Dkt. 57-1 at 2 (General Order 4.12).  Officers must "ensure the risk to the public's safety does not outweigh the governmental interest in apprehending the suspect(s)."  *Id.* at 2–3.  So, officers must consider several factors "[b]efore initiating and during any pursuit," including risk to uninvolved motorists, weather and lighting conditions, road conditions, and traffic conditions.  *Id.*  A

supervisor is assigned to all pursuits and "should terminate the pursuit" if the risk to public safety is too high. *Id.* at 3, 7.

### C. Procedural history

On July 20, 2021, Ms. Flynn filed this lawsuit in Indiana state court, dkt. 1-3, and Defendants removed it to this Court, dkt. 1. Ms. Flynn's amended complaint names six defendants: the Consolidated City of Indianapolis and Marion County ("Indianapolis") and IMPD officers Daniel Butler, Omari Stringer, Dustin Pervine, Cody St. John, and Robert Rider. Dkt. 25 at 2–3. Ms. Flynn alleges federal constitutional violations through 42 U.S.C. § 1983 and four Indiana-law negligence claims. *Id.* at 11–16.

Defendants have moved for summary judgment. Dkt. 57.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584.

## III.
## Analysis

### A. Substantive due process claim

The Fourteenth Amendment's Due Process Clause prohibits the government from "depriv[ing] any person of life, liberty or property without due process of law." U.S. CONST. amend. XIV, § 1. The Officers argue that they are entitled to qualified immunity on this claim because their actions did not violate the Fourteenth Amendment. Dkt. 59 at 17–27. Ms. Flynn responds that the Officers were deliberately indifferent to the risk created by their high-speed pursuit. Dkt. 73 at 19–27.

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To overcome qualified immunity, a plaintiff "must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). The parties primarily dispute the first qualified immunity prong. *See* dkt. 59 at 17–27.

An officer violates substantive due process protections only if he or she acts "with criminal recklessness—which is the same as deliberate indifference."

5

*Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021). This standard requires intent. *Id.* So the "key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Lisby v. Henderson*, 74 F.4th 470, 473 (7th Cir. 2023).

Context is essential when evaluating whether the facts support a reasonable inference of intent. *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("[P]reserving the constitutional proportions of substantive due process demands an exact analysis of circumstances."); *Flores*, 997 F.3d at 729 ("The deliberate-indifference standard demands close attention to the particulars of the case. Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions."). "This is why officers giving chase, who 'are supposed to act decisively and to show restraint at the same moment,' have more latitude to balance these competing directives." *Flores*, 997 F.3d at 729 (quoting *Lewis*, 523 U.S. at 850). A "recognizable but generic risk to the public at large" is "insufficient" to support liability. *Lisby*, 74 F.4th at 473.

The deliberate indifference standard is rarely met in emergency situations because officers must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Lewis*, 523 U.S. at 853. For example, the Supreme Court in *Lewis* addressed a "sudden" police chase that began when a motorcyclist fled a traffic stop at speeds up to 100 miles per hour. *Id.* at 837, 853. When the motorcycle tipped over, the pursuing officer skidded into its passenger at 40 miles per hour, causing fatal injuries. *Id.* The

6

Supreme Court held that the officer did not violate the Due Process Clause because he had no malicious motive. *Id.* at 855. Instead, the officer's "instinctive response" to the motorcyclist's "instantaneous" behavior "was to do his job as a law enforcement officer, not to . . . terrorize, cause harm, or kill." *Id.* at 855.

The same is true here. The Officers were investigating an auto theft when Mr. Shirley disregarded Officer Butler's order to open the truck's door and fled. In so doing, Mr. Shirley nearly ran into the Officers, crashed the truck into Officer Butler's car, and then sped away. In response, Officers Stringer and Butler began pursuit immediately. Officer Pervine similarly made an immediate decision to join the pursuit. Lieutenant Rider had to make quick decisions based on the information he was receiving from the officers involved about whether to call off the pursuit, first when Officers Stringer and Butler didn't respond to his questions, and then when Officer Pervine started "calling the chase." And Officer St. John deployed stop sticks during the chase to try to stop Mr. Shirley. Throughout the chase, which lasted about five and a half minutes, Mr. Shirley was fleeing dangerously by, for example, speeding as fast as 90 miles per hour, running stop lights, and driving on the shoulder of the road or on the sidewalk.

The entire chase therefore involved "split-second judgments—in circumstances that [were] tense, uncertain, and rapidly evolving." *Lewis*, 523 U.S. at 853 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Based on these particular facts, no reasonable jury could infer that the Officers intended

7

to harm Mr. Flynn. *Id.* at 854 ("[H]igh-speed chases with no intent to harm suspects physically . . . do not give rise to liability under the Fourteenth Amendment.").

Ms. Flynn nevertheless argues there are facts that would allow a reasonable jury to infer deliberate indifference:

- The pursuit lasted more than five minutes, giving the Officers time to deliberate.
- Officers continued with the pursuit even though Mr. Shirley was driving recklessly in traffic at dusk.
- IMPD did not block intersections on the chase's route to protect the public.
- Officers did not accurately weigh the factors in IMPD's General Order 4.12, which determine whether a pursuit should be initiated and continued.
- Despite rules to the contrary, a supervisor was never assigned to the pursuit, and Lieutenant Rider did not announce himself as the supervisor.
- Officer Pervine unilaterally decided to join a pursuit—traveling at 90–100 miles per hour—that already had two other officers engaged. He then "called" the speeds of the officers significantly below their actual pace.

Dkt. 73 at 5–6, 22–24.

But that evidence does not meaningfully distinguish controlling Supreme Court and Seventh Circuit precedent involving comparable facts. In *Lewis*, an officer chased a motorcycle "[f]or 75 seconds over a course of 1.3 miles in residential neighborhood" at speeds up to 100 miles per hour while the motorcycle "wove in and out of oncoming traffic, forcing two cars and a bicycle to swerve off the road." 523 U.S. at 837. And in *Steen v. Myers*, a similar pursuit lasted about six minutes and "reached speeds between 100 and 130 miles per hour," with the officer following the suspect too closely and failing to "stop the pursuit based on weighing the risks and the rewards." 486 F.3d

8

1017, 1019, 1023 (7th Cir. 2007). And the chase in each case ended with an accident resulting in a civilian's death.

Like the facts here, *Lewis* and *Steen* each involved fast decision-making by the police in the context of a rapidly evolving pursuit. And in both cases "prudence" may have supported different choices by the officers. *Lewis*, 523 U.S. at 854–55; *see Steen*, 486 F.3d at 1023–24 (declining to address "whether the pursuit was wise"). But neither case involved evidence that the officers had an "intent to harm," and without that evidence, the plaintiffs could not meet the "shocks-the-conscience test." *Lewis*, 523 U.S. at 853; *Steen*, 486 F.3d at 1024.

The same is true here—Ms. Flynn has not designated evidence that shows "some intent to harm that goes beyond the traffic stop, the decision to pursue, and the decision to not terminate the pursuit at some point before the crash." *Steen*, 486 F.3d at 1024. Her designated evidence thus "goes to the question of whether the pursuit was wise, not whether it violated the Constitution." *Steen*, 486 F.3d at 1023. Under the Due Process Clause, it doesn't matter whether it would have been wiser to stand down rather than to pursue Mr. Shirley. Instead, quick decisions made by police officers under uncertain, stressful, and rapidly evolving circumstances receive a substantial degree of deference—so constitutional liability requires "intent to harm." *Lewis*, 523 U.S. at 852–54; *Flores*, 997 F.3d at 729 ("This is why officers giving chase, who 'are supposed to act decisively and to show restraint at the same moment,' have more latitude to balance these competing directives.").

9

Similarly, "a failure to comply with departmental policy does not implicate the Constitutional protections of the Fourteenth Amendment." *Id.* (relying on *Lewis*, 523 U.S. at 838–39). Under *Lewis* and *Steen*, then, no reasonable jury could find that the Officers had an intent to harm Mr. Flynn.

Finally, Ms. Flynn argues that *Lewis* and *Steen* "are inapplicable," and the Seventh Circuit's recent opinion in *Flores v. City of South Bend* requires a different outcome. Dkt. 72 at 20 (citing 997 F.3d 725 (7th Cir. 2021)). In *Flores*, police officers reported that they were making a traffic stop but did not say it was an emergency, ask for backup, or pursue the driver. 997 F.3d at 728. Another officer nevertheless sped through a residential neighborhood at up to 98 miles per hour, barely used his lights or sirens, and ran a red light—crashing into an uninvolved driver's car and killing the driver. *Id.* The Seventh Circuit held that the officer's "reckless conduct, unjustified by any emergency or even an order to assist in a routine traffic stop that five officers had under control, allows the inference that he subjectively knew about the risk he created and consciously disregarded it." *Id.* at 729–30.

Despite the different outcome, *Flores* applied the same legal standard that *Lewis* and *Steen* did, without questioning those holdings. *See id* at 729 ("The key question is whether the officer 'ha[d] sufficient knowledge of the danger' such that 'one can infer he intended to inflict the resultant injury.'"). *Flores* simply emphasized that context matters. There, the outcome turned on the dramatically different context in which the officer's conduct arose. *Id.* ("The deliberate-indifference standard demands close attention to the particulars of

10

the case. Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions."). In *Flores*, there was no discernable justification for the officer's decision to drive "blind through an intersection at 78 to 98 miles per hour" to "assist in a routine traffic stop that five officers had under control." *Id.* at 730.

Here, in contrast, the catalyst for the chase was when Mr. Shirley disobeyed Officer Butler's order to open the door of his truck, and suddenly fled, hitting a patrol car and nearly running the officers over. The abrupt and startling nature of Mr. Shirley's behavior is depicted on video from Officer Butler's body camera. *See* dkt. 57-6 (Butler Body Cam at 1:07–1:17). Like in *Lewis*, the Officers here were "faced with a course of lawless behavior for which the police were not to blame. . . . [The suspect's] outrageous behavior was practically instantaneous, and so was [the officer's] response." *Lewis*, 523 U.S. at 855. The officers therefore were not "responding to a nonemergency situation or inserting themselves into a situation that is already under control." *Flores*, 997 F.3d at 729. So, for the reasons explained above, *Flores* does not show that a reasonable jury could find an intent to harm. There is therefore no basis to meaningfully distinguish this case from *Lewis* and *Steen* and reach a different outcome.

In sum, while the Officers' emergency high-speed pursuit ended in a tragic accident, they can be liable under the Fourteenth Amendment only if they had an intent to harm. Since no reasonable jury could reach that

11

conclusion here, the Officers are entitled to summary judgment based on qualified immunity.

### B. Failure-to-train claim

Ms. Flynn also brings a *Monell* claim against Indianapolis for failure to train its police officers. *See* dkt. 73 at 27–33. But a municipality like Indianapolis "cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021). Since, for the reasons explained above, no reasonable jury could find a Fourteenth Amendment violation, Ms. Flynn cannot succeed on a *Monell* claim. Summary judgment on this claim is **GRANTED** in favor of Indianapolis.[1]

### C. Procedural due process claim

The parties dispute whether Ms. Flynn may pursue a § 1983 claim alleging that Indiana's "post-deprivation procedures" and statutory caps deny her due process of law. *See* dkt. 73 at 34–35; dkt. 77 at 18–20. Defendants did not address this claim in their opening brief because they believed that Ms. Flynn abandoned it in her statement of claims. Dkt. 77 at 18–20. Ms. Flynn argues that her statement of claims put Defendants on notice of this claim, so

---

[1] The parties have each filed a motion to limit or exclude expert testimony. Dkt. 88; dkt. 92. As explained above, Defendants are entitled to summary judgment on Ms. Flynn's federal claims regardless of whether the experts' testimony is admissible, so the Court need not rule on the merits of those motion to resolve Defendants' motion for summary judgment. Moreover, the motions to exclude relate largely to the experts' testimony about Ms. Flynn's failure-to-train claim. *See* dkt. 88 at 13–14; dkt. 92 at 1–2. The motions therefore no longer reflect the claims proceeding in this case and are thus **DENIED without prejudice** to refiling as necessary. Dkt. [88]; dkt. [92].

they waived the ability to move for summary judgment on it. Dkt. 73 at 34–35; dkt. 85 at 8–14.

Ms. Flynn did raise this issue in her statement of claims, albeit in a single paragraph in her 13-page, 84-paragraph filing. Dkt. 54 at 8–9, ¶ 54. So, while arguments raised for the first time in a reply brief are generally waived, *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021), in this situation, the Court declines to find waiver and exercises its discretion to address the merits, *see Alioto v. Town of Lisbon*, 651 F.3d 715, 722 (7th Cir. 2011).

The Indiana Tort Claims Act has a statutory cap on how much money can be recovered in a tort claim against a governmental entity or public employee. *See* Ind. Code § 34-13-3-4. Defendants argue that Seventh Circuit precedent shows that there's no due process violation because plaintiffs have other methods of recovery. Dkt. 77 at 20. Ms. Flynn responds that the Indiana Tort Claims Act effectively denies her an adequate opportunity to seek compensation for Mr. Flynn's death, violating her due process rights. Dkt. 85 at 13–14; *see* dkt. 25 at 9.

Here, because the Officers are entitled to summary judgment on Ms. Flynn's substantive due process and *Monell* claims, her negligence claims are the only remaining grounds for recovery against state actors. *See* dkt. 25 at 11–16. And when "a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Daniels v. Williams*, 474 U.S. 327, 333 (1986); *see Tully v. Barada*,

13

599 F.3d 591, 595 (7th Cir. 2010). Moreover, even if due process required Indiana to provide an "adequate post-deprivation remedy," the Seventh Circuit has held that the Indiana Tort Claims Act meets that standard and "no more process [is] due." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).

It therefore appears that Defendants are entitled to summary judgment on this claim. However, because the parties have not filed full briefing on this issue, Ms. Flynn may show cause by October 13, 2023 why the Court should not grant summary judgment to Defendants on this claim. Defendants may respond by October 27, 2023.

### D. Remaining state-law claims

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Management Co., Inc. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt.*, 672 F.3d at 479. The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

14

*Id.* at 480.

Here, none of the parties have addressed whether the Court should relinquish supplemental jurisdiction over this case, but the factors weigh in favor of remanding this case to Marion Superior Court. First, since this case would be remanded, the statute of limitations will not preclude further litigation. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988). Second, substantial judicial resources have not been spent on any of the state-law claims. *RWJ*, 672 F.3d at 481 ("[C]oncerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims.").

And, most importantly, "the resolution of the state claims in this case is" not clear because Defendants have not moved for summary judgment on all of Ms. Flynn's negligence claims. *See id.*; dkt. 59 at 1 n.1. Given the Court's resolution of the federal claims, "the center of gravity in the case has shifted to [Indiana negligence law]; these are issues ideally decided by an [Indiana] judge applying [Indiana] law." *RWJ*, 672 F.3d at 481.

In sum, the factors weigh in favor of the Court's relinquishing supplemental jurisdiction over Ms. Flynn's state law claims. The parties may show cause by October 27, 2023 why the state-law claims should not be remanded to the Marion Superior Court.

## IV.
## Conclusion

Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's substantive due process and failure-to-train claims. Dkt. [57]. Ms. Flynn **may show cause by October 13, 2023** why the Court should not grant summary judgment to Defendants on her procedural due process claim. Defendants **may respond by October 27, 2023**.

The parties' motions to exclude or limit expert testimony and motion for leave to file surreply are **DENIED without prejudice**. Dkt. [88]; dkt. [92]; dkt. [104].

The parties **may show cause by October 27, 2023** why the Court should not remand Ms. Flynn's state-law claims to the Marion Superior Court.

**SO ORDERED.**

Date: 9/27/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel